[Civ. No. 24690.   First Dist., Div. Three.   Feb. 19, 1969.]

VAL STROUGH CHEVROLET CO., Plaintiff and Respondent, v. TOM BRIGHT, as Director of the Department of Motor Vehicles, Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendant and Appellant.

Connella, Sherburne & Myers and E. Conrad Connella for Plaintiff and Respondent.

SALSMAN, J.—This is an appeal by the Director of the State Department of Motor Vehicles from a judgment of the superior court directing him to set aside his order suspending for 30 days the motor vehicle dealer's license of respondent Val Strough Chevrolet Co., a corporation. For reasons hereafter stated, we affirm the judgment of the superior court.

Respondent Val Strough Chevrolet Co. is a duly licensed automobile dealer. At all times relevant here it had in its employ an automobile salesman by the name of Lon Thompson. Thompson was properly licensed as an automobile salesman.

The Affiliated Government Employees Distributing Company, Inc. (hereafter referred to as A.G.E.) is a retail discount house doing business in Oakland and Vallejo. A.G.E. maintains a "referral department" which advertises a financing plan for purchasers of new cars, and may and does refer its customers to any cooperating automobile dealer, depending upon the make of car in which its customer is interested.

In 1964 A.G.E. issued display advertising featuring its "Auto Financing Plan" at 4¼ percent interest with up to 36 months in which to repay the loan. The advertisement asserted that "The car of your choice may be purchased at A.G.E.'s preferred price . . . by following these three easy steps: 1. Contact your A.G.E. Referral Department for the auto you are interested in purchasing. 2. After obtaining Purchase Order from the Referral Dealer contact the A.G.E. Referral Department and submit credit application. 3. When credit application is processed and the automobile is ready for delivery, loan papers are signed and a draft is issued to clear balance owing at the automobile dealership. In addition to the advantage of the savings that can be realized on the low-interest factor, our cooperating automobile dealers will grant a special discount due to the large number of A.G.E. Members referred to them each month." Below this, in large type, prospective borrowers were exhorted to "Save On These", followed by the names of almost every model automobile marketed by both American and foreign manufacturers.

It is undisputed that whenever an A.G.E. customer indicated interest in the purchase of a Chevrolet automobile, the customer was referred to respondent's salesman Lon Thompson, at respondent's place of business. If the customer thus referred purchased an automobile from respondent, it was Thompson's practice to remit $50 from his own funds to A.G.E. because of the referral and sale. The management of Val Strough knew of this practice and had discussed its pro-

priety with its attorney. It was respondent's custom to pay for "creative business" obtained by its salesman. "Creative business" was said to be business from a person who had never bought a car from respondent and who did not come to the firm as a result of its regular advertising or established reputation. Thompson's sales resulting from reference from A.G.E. were considered "creative business" and accordingly respondent paid Thompson $25 extra, in addition to his regular commission, for every car sold in this fashion. There was also evidence that, although respondent knew of Thompson's practice, it had no agreement or arrangement with A.G.E., but on the other hand did nothing to discourage the Thompson-A.G.E. relationship.

Appellant Department of Motor Vehicles accused respondent of violation of sections 11709 and 11713, subdivision (i) of the Vehicle Code.[1]

In the administrative proceedings the appellant department found in substance that A.G.E. was an unlicensed vehicle "salesman," as defined in section 675 of the Vehicle Code;[2] and that respondent Val Strough Chevrolet Co. had employed A.G.E. within the meaning of section 11713, subdivision (i). The department also found that respondent had caused its business to be operated at an additional site or branch (the

[1]Section 11709 reads: "A dealer's established place of business and such other sites or locations as may be operated and maintained by such dealers in conjunction with their established place of business shall have posted in a conspicuous place in each and every location the certificate and license issued by the department and shall have erected or posted thereon such signs or devices providing information relating to the dealer's name, the location and address of such dealer's established place of business to enable any person doing business with such dealer to identify him properly. Each such sign erected or posted on an established place of business, shall have an area of not less than two square feet per side displayed, and shall contain lettering of sufficient size to enable the sign to be read from a distance of at least 50 feet."

Section 11713, subdivision (i) reads in part: "It shall be unlawful and a violation of this code for the holder of any license issued under this chapter: . . . (i) To employ any person as a salesman who has not been licensed pursuant to Article 2 (commencing at Section 11800) of this chapter, and whose license is not displayed on the premises of the dealer as provided in Section 11804."

[2]Vehicle Code section 675 reads in part as follows: "(a) 'Vehicle Salesman' is a person not otherwise expressly excluded by this section, who: (1) Is employed as a salesman by a dealer as defined in Section 285, or who, under any form of contract, agreement, or arrangement with a dealer, for commission, money, profit, or other thing of value, sells, exchanges, buys, or offers for sale, negotiates, or attempts to negotiate, a sale, or exchange of an interest in a vehicle required to be registered buy or exchange an interest in a vehicle required to be registered, and

premises of A.G.E.) without obtaining a license therefor. The department ordered a 30-day suspension of respondent's dealer's license (to be stayed, however), and placed respondent on two years' probation, subject to certain conditions dictated by the department. The superior court accepted the record of the administrative proceedings, heard argument, received the briefs of counsel and made findings, upon which it entered judgment granting the writ and commanding the department to set aside its orders.

The first question we must resolve is the proper scope of our review in a case of this nature. The Department of Motor Vehicles is a state agency of legislative origin. In proper cases it is given the power to revoke or suspend licenses issued by it, as in this case it suspended respondent's license to act as a motor vehicle dealer. Its action affected respondent's vested right to act in the capacity of a motor vehicle dealer in the conduct of its business. In such cases, where the conduct of the administrative agency is challenged by mandamus proceedings, the superior court is entitled to exercise its independent judgment as to the weight and sufficiency of the evidence contained in the record of the hearings before the agency. (Code Civ. Proc. § 1094.5, subd. (c); *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20]; *Caro* v. *Savage,* 201 Cal.App.2d 530, 538 [20 Cal. Rptr. 286]; Cal. Administrative Mandamus (Cont. Ed. Bar) §§ 5.62, 5.71.) Upon appellate review of the findings and judgment of the superior court, we look to the record only to see if there is substantial evidence to support the findings and judgment of the superior court.

Appellant contends, however, that the evidence in this case is not in conflict and that the effect of the evidence presents only a question of law as to which the findings of the superior court are in no way binding upon us at the appellate level. (*Caro* v. *Savage, supra,* 201 Cal.App.2d 530, 541.) Thus, the argument continues, we may review the evidence and decide whether or not, as a matter of law, it establishes that respondent employed an unlicensed salesman or conducted its business from unlicensed premises.

We do not accept this contention. In this case, as in almost every other case of similar nature, the uncontradicted evidence and testimony is subject to different inferences. It

who receives or expects to receive a commission, money, brokerage fees, profit, or any other thing of value, from either the seller or purchaser of said vehicle; . . .''

is for the trial judge, in the proper exercise of his power, to evaluate all of the evidence in the record before him and to draw therefrom whatever inferences he may deem proper. If the inferences he draws from the evidence are reasonable, and if they find support in the record, we, in the proper exercise of our appellate powers, must affirm the judgment. It is only where the evidence is uncontradicted, and only one reasonable inference may be drawn from it, that we are free to set aside the findings and judgment of the superior court. (See *Hicks* v. *Reis*, 21 Cal.2d 654, 660 [134 P.2d 788]; 3 Witkin Cal. Procedure, (1954) pp. 2252-2253, and cases cited.) In the case we here consider, the evidence, although uncontradicted, was reasonably susceptible of different inferences.

The appellant found from evidence taken at the administrative level that respondent employed A.G.E. as a vehicle salesman as that term is defined in section 675 of the Vehicle Code. The superior court, considering the same record, reached the opposite conclusion. Is there any substantial evidence to support the finding of the superior court? There is. The record reflects none of the usual attributes of an employer-employee relationship. There was no agreement or understanding between respondent and A.G.E. as to any services to be rendered or compensation to be paid. Likewise there is not the slightest evidence that Val Strough exercised any control, or had the right to control, the conduct and activities of A.G.E. The strong emphasis of A.G.E.'s display advertising was upon the favorable financing it could arrange for new car buyers. There was no suggestion in any of the advertising that any particular make of car be purchased. When a customer made inquiry of A.G.E. in response to its advertising concerning financing, if the customer was interested in a Chevrolet automobile, he was referred to Lon Thompson, respondent's salesman. Thereafter all of the negotiations concerning the purchase of the vehicle took place at respondent's place of business and A.G.E. came back into the picture only after the sale had been arranged between respondent and the customer, and then only with respect to financing the customer's purchase. A.G.E. had no cars for sale on its premises, nor did it take part in any of the negotiations looking toward the sale or purchase of new cars. This evidence therefore supports the inference that A.G.E. was not acting for respondent and was not employed by the respondent as a vehicle salesman within the meaning of section 675, subdivision (a)(1) of the Vehicle Code.

█ Appellant also argues that the evidence shows that A.G.E. was a vehicle salesman within the meaning of Vehicle Code section 675, subdivision (a)(2).[3] Although the language of section 675, subdivision (a)(2) is broad, the evidence does not establish that, as a matter of law, A.G.E.'s conduct falls within the scope of the statute. Photographic copies of A.G.E.'s advertising are in the record. In all of this advertising the emphasis is upon low cost financing, and all of the bold type dwells upon that subject. The very last sentence in the advertising, in small type, does declare that "In addition to the advantage of the savings that can be realized on the low-interest factor, our cooperating automobile dealers will grant a special discount due to the large number of A.G.E. Members referred to them each month." Looking at the advertising as a whole it is reasonable to say, and it was a reasonable inference for the trial court to draw, that A.G.E.'s interest was in financing vehicles through its banking connections rather than the sale of new cars.

We recognize, of course, that there was other evidence from which a contrary conclusion could be reached, particularly the evidence which shows that A.G.E. received compensation from Lon Thompson for sales made through A.G.E. referrals. The trial court could have inferred that the purpose of A.G.E.'s advertising, followed by its system of referral and receipt of compensation from the successful salesman was a device to induce the sale of new cars. But the inference is not compelled, and the inference the trial court drew from the whole record is reasonable, and finds support in the record.

█ Appellant also charged respondent with causing respondent's business to be conducted and maintained at A.G.E.'s premises without compliance with Vehicle Code section 11709. The superior court found that, in light of the entire record, there was no evidence to support this charge. This finding simply means that appellant did not sustain its burden of proof, and results from the trial court's evaluation of the evidence presented, and its independent conclusion that the charge was not proved. Again, while there was no conflict in the evidence as to the facts, the trial court drew an inference from the facts that was contrary to that reached by the department on the same evidence. █ Our concern is whether the trial court's inference is reasonable, not whether it is the only inference that might find support in the evidence. As we

---

[3]See footnote 2, *supra,* for the language of section 675, subdivision (a)(2).

have seen, A.G.E. merely conducted a referral service for its customers who wished to buy new cars, offering at the same time a promise of liberal low-cost financing. Except for the understanding between Thompson and A.G.E. there was no contact whatsoever between A.G.E. and respondent. To say that the evidence compels the conclusion that the respondent conducted its retail dealership from A.G.E.'s premises reaches too far. We think the trial court properly rejected this view of the evidence, and that its conclusion is reasonable and supported by the record.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied March 21, 1969, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1969.