[L.A. No. 30206. In Bank. May 4, 1976.]

DOUGLAS TURNER, Plaintiff and Appellant, v.
BOARD OF TRUSTEES, CALEXICO UNIFIED
SCHOOL DISTRICT, Defendant and Respondent.

820

**COUNSEL**

William E. Brown and Brown & Conradi for Plaintiff and Appellant.

James H. Harmon, County Counsel, for Defendant and Respondent.

**OPINION**

**CLARK, J.**—Plaintiff Douglas Turner appeals from judgment denying writ of mandate to compel the Board of Trustees, Calexico Unified School District (board), to reemploy him as a third-year probationary teacher.

Turner, employed as a high school algebra teacher for the school year 1970-1971, was rehired on a probationary basis for the next year but in March 1972 was notified he would not be rehired for the succeeding year. At his request and pursuant to Education Code section 13443, subdivision (b), Turner was served with accusation and notice of hearing.[1]

At the hearing, Miss Allen, head of the mathematics department, testified she had talked with Turner in late May or June 1971, telling him she understood he was not teaching algebra. He responded he was "no longer teaching algebra, that he was teaching things that he thought would be of more use to the students at this point in their lives," such as health. He felt he had sufficiently covered the course content.

---

[1] All statutory references are to the Education Code unless otherwise specified.

The following year Miss Allen, who had a number of Turner's former students in her geometry classes, concluded they were inadequately prepared in algebra. Several told her they had not learned factoring and had never heard of ratios and proportions. Some of the advanced students had trouble solving equations with one or two variables, and a number indicated they listened to music in Turner's classes.

On cross-examination, Miss Allen acknowledged she was not qualified to judge the competency of classroom teachers, and further, she was confused as to whether those not learning factoring were students of Turner or another teacher. Her conclusions on inadequate student preparation were based mainly on student statements.

Two of Turner's former students testified that during part of the winter of the 1970-1971 school year, they merely sat in class, talked, and listened to music for entire class sessions without receiving instruction in algebra. During other periods Turner assigned problems for the first 15 or 20 minutes of class but played music for the remaining time. Few homework assignments were given.

During the latter part of Turner's first year, his teaching was evaluated by the school's principal. The principal's report of 3 March 1971 rated petitioner's teaching performance "commendable" or "acceptable" in every category.

The hearing officer found Turner failed "to give satisfactory instruction in algebra, when compared with the standards generally expected of other faculty, during the latter portion of the preceding (1970-1971) school year," and this failure related to the welfare of the school and its pupils.[2]

The officer also found that Turner's performance in his first year was hampered by a malfunctioning air-cooler, an exceedingly hot classroom, late availability of textbooks, and personal problems, including difficulties in finding a residence. Further findings indicated his performance improved the next year.

Adopting the determinations of the hearing officer, the board elected not to reemploy Turner for the 1972-1973 school year. The board's decision was subsequently upheld by the trial court, which found the

[2]While there were five other charges of misconduct, they were resolved in Turner's favor, and the evidence relating to them has been omitted.

board's action was supported by substantial evidence and related solely to the welfare of the school and its pupils.

The Legislature has created a comprehensive scheme delineating the rights of teachers to their positions. Teachers are classified as permanent employees—and probationary employees. In general, a teacher employed by a school district for three consecutive school years, if reelected for the next school year, becomes a permanent employee at the commencement of the fourth school year. (§ 13304.) During the three-year period, a teacher employed for a school year is a *probationary teacher.* (§ 13334.)[3]

Grounds for dismissal of a *permanent* employee are specified in sections 13403 and 13403.5.[4] The permanent employee must be given notice of the charges between September 16 and May 14, and he may demand a hearing. When the cause for dismissal is based on subdivision (d) of section 13403 (incompetency), the hearing shall be by a commission on professional competence, composed of one member selected by the employee, one by the school board and one a hearing officer of the State Office of Administrative Procedure. (§ 13413.) Either the school board or the employee may seek court review of the commission's decision, and the court on review shall exercise its independent judgment on the evidence.[5] (§ 13414.)

---

[3]There is also provision for employment of substitute teachers and of temporary teachers on a day-to-day basis during the first three months of the school year. (§ 13336 et seq.)

[4]Section 13403 provides: "No permanent employee shall be dismissed except for one or more of the following causes: [¶] (a) Immoral or unprofessional conduct. [¶] (b) Commission, aiding, or advocating the commission of acts of criminal syndicalism, as prohibited by Chapter 188, Statutes of 1919, or in any amendment thereof. [¶] (c) Dishonesty. [¶] (d) Incompetency. [¶] (e) Evident unfitness for service. [¶] (f) Physical or mental condition unfitting him to instruct or associate with children. [¶] (g) Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the State Board of Education or by the governing board of the school district employing him. [¶] (h) Conviction of a felony or of any crime involving moral turpitude. [¶] (i) Violation of Section 9031 of this code or conduct specified in Section 1028 of the Government Code, added by Chapter 1418 of the Statutes of 1947. [¶] (j) Violation of any provision in Sections 12952 to 12958, inclusive, of this code. [¶] (k) Knowing membership by the employee in the Communist Party."

Section 13403.5 provides: "A permanent employee may be dismissed on grounds of unprofessional conduct consisting of acts or omissions other than those specified in Section 13403, but any such charge shall specify instances of behavior deemed to constitute unprofessional conduct."

[5]The same procedure is followed when the cause for dismissal is based on subdivisions (a), (c), (e), and (g) of section 13403. (§§ 13413, 13414.) When the cause for dismissal is

Probationary employees may be dismissed *during the school year* for cause only, as in the case of permanent employees. (§ 13442.)

The school board—by giving notice prior to 15 March—may decide not to reemploy a probationary teacher for the ensuing school year. The probationary teacher is then entitled to timely request a hearing before a hearing officer who shall prepare a proposed decision. (§ 13443, subd. (c).)

Subdivision (c) of section 13443 provides that the school board shall make the final determination as to rehiring probationary teachers. Subdivision (d) of that section also reflects legislative intent to limit judicial review: "The governing board's determination not to reemploy a probationary employee for the ensuing school year shall be for cause only. The determination of the governing board as to the sufficiency of the cause pursuant to this section shall be conclusive, but the cause shall relate solely to the welfare of the schools and the pupils thereof."

At the outset we must determine the proper standard to be utilized by the trial court in reviewing a board's decision not to reemploy a probationary teacher.

In *Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93, 96-97 [37 Cal.Rptr. 194, 389 P.2d 722], this court stated that where "there is evidence to support the board's findings of fact" and the cause for dismissal relates to the welfare of the school and its pupils, the reviewing court may not redetermine the facts or whether they are sufficiently serious to justify dismissal.

This court again recognized the applicability of the substantial evidence test to the board's findings in *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 589 [100 Cal.Rptr. 16, 493 P.2d 480], stating "the reviewing court must accept evidentiary facts shown by substantial evidence and the sufficiency of those facts to constitute a stated cause." These rules were quoted in *Lindros* v. *Governing Bd. of the Torrance Unified School Dist.* (1973) 9 Cal.3d 524, 533-534 [108 Cal.Rptr. 185, 510 P.2d 361], although the court pointed out that neither party had challenged the applicability of the substantial evidence rule.

---

based on the other subdivisions of section 13403, hearing is held before a hearing officer alone, *and his decision is binding on the school board.*

Prior to the decision in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], the substantial evidence rule was applied to review of local administrative adjudications. (*Id.,* at pp. 31-32.) In *Strumsky,* a dual system of review was established. A trial court would thereafter continue applying the substantial evidence rule in reviewing local administrative adjudications not affecting fundamental vested rights. However, in reviewing adjudications affecting fundamental vested rights, a trial court would be required by the constitutional doctrine of separation of powers to exercise independent judgment upon the evidence disclosed in a limited trial de novo.

The question therefore presented by the instant case is whether the right of *probationary* teachers to be rehired for the next school year is vested within the meaning of *Strumsky* so that limited trial de novo review—rather than substantial evidence review—is applicable. We conclude that the right is not vested, that the standard of review for determination not to rehire remains the substantial evidence rule, and that the holdings of *Griggs, Bekiaris,* and *Lindros* continue viable.

Although this court has broadly outlined the distinction between vested and nonvested rights, it has not drawn a sharp line of demarcation. In *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], the court stated: "As we have noted, in determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right is 'vested,' that is, already possessed by the individual. (*McDonough* v. *Goodcell, supra,* 13 Cal.2d 741, 753 [91 P.2d 1035, 123 A.L.R. 1205].) In cases involving applications for a license, the courts have largely deferred to the administrative expertise of the agency. (See *So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 174-178 [223 P.2d 1].) Courts are relatively ill-equipped to determine whether an individual would be qualified, for example, to practice a particular profession or trade. (See *Savelli* v. *Board of Medical Examiners* (1964) 229 Ca.App.2d 124, 129, 131-132 [40 Cal.Rptr. 171].) In a case involving the agency's initial determination whether an individual qualifies to enter a profession or trade the courts uphold the agency decision unless it lacks substantial evidentiary support or infringes upon the applicant's statutory or constitutional rights. Once the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession, the agency's subsequent revocation of the license calls for

an independent judgment review of the facts underlying any such administrative decision." (Fns. omitted.)

By analogy to the *Bixby* language, an applicant for a teaching position does not possess a vested right to be hired, but a tenured teacher possessed a vested right to be retained. Between these two falls the instant case: one's right to be rehired following a trial period to determine competency and effectiveness prior to being granted tenure.

In considering the student's need for education, the teacher's need for job security, and the school board's need for flexibility in evaluating and hiring employees who may remain 40 years, the Legislature may determine whether a teacher's vested right shall be granted, postponed or denied. (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701].) Our school system is established not to provide jobs for teachers but rather to educate the young. Establishing a test period for teachers to prove themselves is essential to a good education system. While refusal to grant total job security at the time of initial hiring may be repugnant to those pursuing a teaching career, repeated statutory amendments relating to probationary teachers' rights (see Comment, *Probationary Teacher Dismissal* (1974) 21 UCLA L.Rev. 1257, 1260-1264), reveal that the Legislature has been well aware of the delicate balancing necessary to accommodate these sometimes competing interests.

Examination of existing statutes convinces us the Legislature has not seen fit to grant probationary teachers a vested right to be rehired so as to make trial de novo review applicable. By labelling the position probationary, the Legislature had clearly advised the employee that the position is neither vested nor permanent. Probation means the teacher is on trial—his competence and suitability remaining to be determined. (See Webster's New Internat. Dict. (3d ed. 1961) p. 1806.) Probationary is the opposite of vested. Although the label may not be determinative, it is strong indication of legislative intent not to grant a vested right.

To hold that a probationary teacher has a vested right to be rehired for the next school year—requiring limited trial de novo review—would contravene portions of section 13443, subdivisions (c) and (d). By providing that the school board's determination of the sufficiency of the cause is conclusive, the Legislature has foreclosed judicial evaluation of the gravity of misconduct of probationary teachers. Under subdivisions (c) and (d), once misconduct relating to the schools and their pupils is

established, it is within the school board's discretion to determine whether the cause is sufficiently serious to warrant a refusal to rehire and whether the teacher's other qualities justify reemployment. (*Lindros* v. *Governing Bd. of the Torrance Unified School Dist., supra,* 9 Cal.3d 524, 534; *Bekiaris* v. *Board of Education, supra,* 6 Cal.3d 575, 586-587; *Griggs* v. *Board of Trustees, supra,.* 61 Cal.2d 93, 96; *McGlone* v. *Mt. Diablo Unified Sch. Dist.* (1969) 3 Cal.App.3d 17, 22 [82 Cal.Rptr. 225]; *American Federation of Teachers* v. *San Lorenzo etc. Sch. Dist.* (1969) 276 Cal.App.2d 132, 136 [80 Cal.Rptr. 758]; *Raney* v. *Board of Trustees* (1966) 239 Cal.App.2d 256, 259 [48 Cal.Rptr. 555].)

In contrast, this court, establishing the scope of limited trial de novo review, upheld a trial court's determination based on conflicting evidence and inferences that an administrative board's finding of moral turpitude was not sustained by the weight of the evidence. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 71 et seq. [64 Cal.Rptr. 785, 435 P.2d 553].) Similarly, in *Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87-88 [17 Cal.Rptr. 488, 366 P.2d 816], this court, recognizing the doctor was guilty of unprofessional conduct in violation of statute, held matters found by way of excuse by the trial court precluded license revocation, permitting only a lesser penalty. Trial de novo review as reflected by the above cases is thus broader than that permitted by subdivisions (c) and (d) and, if applied to decisions refusing to rehire probationary teachers, would invalidate procedural provisions of the subdivisions.

Moreover, because the substantive grounds for dismissal of a permanent teacher (see fn. 4) include substantially all matters constituting "cause" for refusal to rehire a probationary teacher, failure to enforce the procedural differences would mean probationary teachers have the same tenure enjoyed by permanent teachers—a result obviously contrary to legislative intent.

The intention of the Legislature to limit review being manifest, cardinal rules of statutory construction require rejection of the argument that the Legislature has granted probationary teachers a vested right, thereby invalidating the express provision making conclusive the board's determination of sufficiency. ■ Courts should construe all provisions of a statute together, significance being given—if possible—to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (E.g., *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d

222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)[6] And courts should construe statutes where possible in favor of validity. (E.g., *Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].)

 In *Young* v. *Governing Board* (1974) 40 Cal.App.3d 769 [115 Cal.Rptr. 456], the Court of Appeal held the Legislature has given probationary teachers a vested right to be rehired, having provided that employment in effect shall continue until *"divested for cause."* (At p. 780; italics in orig.) However, a provision that administrative action must be for cause means no more than that arbitrary and oppressive action is forbidden, and such a standard will be implied in its absence when the policy leading to the adoption of the legislative enactment is apparent. (*Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 760 [22 Cal.Rptr. 14, 371 P.2d 758]; *In re Petersen* (1958) 51 Cal.2d 177, 184 et seq. [331 P.2d 24]; *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460, 471 [171 P.2d 8]; see *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 380 et seq. [71 Cal.Rptr. 687, 445 P.2d 303].) Moreover, the conclusion in *Young* that the provision requiring cause reflected legislative intent to grant a vested right would—as we have seen—invalidate the provision making the board's determination conclusive. It would be anomalous to reach the result that one provision of a statute has the effect of invalidating the one immediately following it. The court in *Young* also relied upon language in *Board of Regents* v. *Roth, supra,* 408 U.S. 564, 573-574 [33 L.Ed.2d 548, 558-559], but the language is directed to whether a teacher hired for a term has a sufficient interest in his position requiring a hearing for a determination not to rehire. The language does not deal with the question of judicial review of the hearing when, as here, a hearing has been conducted. Insofar as it is contrary to the views expressed herein, *Young* is disapproved.

 The standard of performance in teaching algebra clearly relates to the welfare of the school and its pupils. Turner's termination was

---

[6]When it is contended that one of the provisions of subdivision (d) reflects a legislative intent to grant a vested right to a probationary teacher, it is incumbent upon this court in determining legislative intent to consider the entire subdivision and the effects upon other subdivision provisions which might follow from acceptance of the vested right contention. To refuse or to postpone consideration of the potential invalidity of part of the subdivision, resulting from this court's interpretation of another part of the subdivision, is to hide from reality and to ignore the practical effects of our own decision. Moreover, a determination of partial invalidity of the subdivision may require the conclusion that the statute is not severable, invalidating the entire subdivision—including the portion interpreted today.

based, not on activity outside the classroom, but solely on his failure to perform the principal activity for which he was hired—teaching algebra.

The finding of below-standard performance is supported by substantial evidence, namely, testimony by the department head and two students showing Turner was not teaching algebra. Although evidence also exists not supportive of the findings, the weight to be given the conflicting evidence is for the board to determine.

It is also for the board to determine whether the factors affecting Turner's performance explained or excused his below-standard teaching. Just as the courts may not reweigh the gravity of the facts found justifying dismissal, they may not redetermine the weight to be given the offered excuse.

Turner contends his rehiring for the 1971-1972 school year establishes that his conduct was satisfactory in the 1970-1971 school year. However, a recommendation not to rehire for the next school year must be given prior to 15 March or the teacher is automatically hired for the next year. (§ 13443.) The rehiring occurrence in the midst of the school year may not be viewed as a determination of satisfactory conduct for the entire year. It is noted Turner's low performance occurred partially after 15 March 1971, the administrator gaining knowledge of all his questionable conduct after that date.

Although Turner's performance during his second year was satisfactory, he cannot demand—and courts may not require—the school board and students face the risk of repetition of earlier unsatisfactory performance.

Viewing the record as a whole, we conclude the board did not abuse its discretion in refusing to rehire Turner.

The judgment is affirmed.

McComb, J., Mosk, J., and Richardson, J., concurred.

**TOBRINER, J.**—I dissent.

The critical issue in this case—a very narrow issue—is whether a superior court, in reviewing a school board decision not to reemploy a probationary teacher, must utilize its independent judgment in evaluat-

ing disputed facts, or alternatively, must uphold the factual determinations of the school board so long as such determinations are supported by substantial evidence. Under this court's decisions in *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242] and *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], the resolution of this issue turns on whether the school board's decision not to reemploy a probationary teacher substantially affects a "fundamental, vested right" of the teacher. No one questions the "fundamental" nature of the probationary teacher's right in this context;[1] rather, the controversy in this case relates solely to the issue of whether the probationary teacher enjoys a "vested" right within the meaning of *Bixby* and *Strumsky.*

The majority conclude that the probationary teacher enjoys no such "vested" right, relying heavily on the dictionary meaning of "probationary" and on the supposition that a contrary conclusion would obliterate all distinctions between permanent and probationary teachers in this state. As I shall explain, however, the majority's analysis fails to take proper cognizance of the fact that the Legislature has explicitly provided probationary teachers with a statutory right to be reemployed unless terminated "for cause"; this statutory provision, in itself, establishes the "vested" nature of the probationary teacher's interest in reemployment. Moreover, as I further explain, the majority's suggestion that such a conclusion would eliminate the distinctions between permanent and probationary teachers simply reflects a fundamental misconception of the scope of the *Bixby-Strumsky* doctrine.

As the majority properly recognize, analysis of the question at issue here must necessarily begin with this court's decision in *Bixby* v. *Pierno, supra,* 4 Cal.3d 130. In *Bixby,* we articulated the distinction between

---

[1]In *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144-145 [93 Cal.Rptr. 234, 481 P.2d 242], we said: "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation. This approach finds its application in such an instance as the opportunity to continue the practice of one's trade or profession. . . ." (See, e.g., *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553] (physician); *Tringham* v. *State Board of Education* (1958) 50 Cal.2d 507, 508 [326 P.2d 850] (credentialed teacher); *Val Strough Chevrolet Co.* v. *Bright* (1969) 269 Cal.App.2d 855, 860 [75 Cal.Rptr. 363] (automobile dealer); *Arenstein* v. *California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179, 186-187 [71 Cal.Rptr. 357] (pharmacist); *McPherson* v. *Real Estate Commissioner* (1958) 162 Cal.App.2d 751 [329 P.2d 12] (realtor).) In *Meyer* v. *Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 1045, 43 S.Ct. 625, 29 A.L.R. 1446], the United States Supreme Court listed the right of the individual "to engage in any of the common occupations of life" as one of the fundamental liberties of the individual.

"vested" and "nonvested" rights by reference to the differential treatment that traditionally has been accorded an *applicant* who has been denied a license, as distinguished from a *license holder* whose license has been revoked. Observing that "[c]ourts are relatively ill-equipped to determine [in the first instance] whether an individual would be qualified . . . to practice a particular profession or trade," we recognized that "courts uphold [an agency's initial determination whether an individual qualifies to enter a profession or trade] unless it lacks substantial evidentiary support or infringes upon the applicant's statutory or constitutional rights." (*Id.,* at p. 146.) On the other hand, we emphasized that "[o]nce the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession, the agency's subsequent revocation of the license calls for an independent judgment review of the facts underlying any such administrative decision." (*Id.*)

In the instant case, of course, the probationary teacher whose rights are at issue is in no sense analogous to a mere applicant for a license. Such a teacher has already obtained his teaching credential (see Ed. Code, § 13200 et seq.) and moreover, has already been found tentatively acceptable by the local school district which has hired him. Most significantly, such a probationary teacher enjoys much more than just a subjective "hope" or "expectancy" that he will be reemployed by the school district; instead, he possesses a statutory right to reemployment which may be lost only if the local school board finds proper "cause" not to reemploy him.

Thus, the critical factor in this case is the mandate of section 13443, subdivision (d) of the Education Code, which provides in relevant part that "[t]he governing board's determination not to reemploy a probationary employee for the ensuing school year *shall be for cause only.*" (Italics added.) Although the section goes on to provide that the governing board has the final word as to whether a given "cause" is sufficiently serious to warrant non-reemployment, the provision also stipulates that "the cause shall relate solely to the welfare of the school and the pupils thereof." Accordingly, so long as a probationary teacher conducts himself so as to provide no "cause" "relating to the welfare of the schools and the pupils thereof" for non-reemployment, the teacher retains a statutory right to reemployment. This statutory right, though subject to divestment upon a finding of "cause," constitutes a "vested" right within the meaning of *Bixby.* (See *Young* v. *Governing Board* (1974) 40 Cal.App.3d 769 [115 Cal.Rptr. 456].)

The numerous cases upholding the "vested" nature of statutory retirement benefits confirm this conclusion. (See *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 45, *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 853 [179 P.2d 799]; *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 579 [59 P.2d 104]; *O'Dea* v. *Cook* (1917) 176 Cal. 659, 661-662 [169 P. 366].) As these cases recognize, although an employee's right to retirement benefits may be lost by the occurrence of a condition subsequent (such as the lawful termination of employment before maturity), the right to such statutory benefits *vests* upon the initial acceptance of employment; in similar fashion, although a probationary teacher's right to reemployment may be lost by the occurrence of a condition subsequent (a finding of "cause" for non-reemployment), the statutory right vests upon the probationary teacher's acceptance of employment. As in the retirement benefit cases, judicial review of factual determinations of the local administrative bodies must be exercised pursuant to the "independent judgment" standard. (See *Strumsky, supra,* 11 Cal.3d at pp. 45-46.)[2]

In reaching a contrary conclusion, the majority make two fundamental errors. First, the majority suggest that since plaintiff is a "probationary" teacher, it follows from the dictionary definition of "probationary" that he has no "vested" rights under *Bixby* or *Strumsky.* The defect in this reasoning is rather patent, for it simply ignores the fact that in this state "probationary" teacher is a term of art, a term used to describe a class of teachers whose rights have been defined in a complex body of legislative enactments. (See Ed. Code, §§ 13333, 13335, 13336.5, 13442, 13443, 13443.5, 13443.6, 13444.5.) Thus, while the term "probationary employee" might normally connote an employee with no legally protected rights to reemployment, this is simply not true of "probationary" teachers in California. Instead, such probationary teachers have been accorded numerous procedural and substantive rights, including statutory protection from termination without "cause." These specific statu-

[2]The decisions in *Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93 [37 Cal.Rptr. 194, 389 P.2d 722], and *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480], relied upon by the majority, did not involve the issue before us. The court in *Griggs* held "where the cause for dismissal found by the board can reasonably be said to relate to the 'welfare of the schools and pupils thereof,' the reviewing court may not consider whether the facts found are sufficiently serious to justify dismissal." (*Id.,* at p. 96.) In *Bekiaris* the court stated that "it remains for the court to determine *as a matter of law* whether such cause [for dismissal] relates to the welfare of the school and its pupils and is therefore adequate under the provisions of section 13443 to justify dismissal." (*Id.,* at p. 589; italics in the original.) Obviously any reference in these cases to the standard of review as to *factual* findings must be read in the light of the subsequent ruling in *Strumsky.*

tory enactments, of course, must take precedence over Webster's New International Dictionary.

Second, the majority also err in suggesting that recognition of a probationary teacher's "vested" right under *Bixby-Strumsky* will obliterate any distinction between probationary and permanent teachers. As I explain, this suggestion simply reflects a basic misconception of the nature of the *Bixby-Strumsky* doctrine.

Under the present legislative scheme, while a school board may only refuse to reemploy a probationary teacher "for cause," once lawful "cause" relating to the welfare of the schools or pupils is shown, the school board is the final arbiter in determining whether such cause is sufficient to warrant non-reemployment. The application of the "independent judgment" standard of review contemplated by *Bixby-Strumsky* would not alter this legislative scheme; the school board would retain ultimate judgment on the *"sufficiency"* of the cause, unencumbered by judicial second-guessing. Under *Bixby* and *Strumsky,* trial courts would exercise their independent judgment only with reference to the disputed *factual issues* in the record, i.e., whether or not the charges brought against the teacher were true or not; if the court found that the charges were true and related to the welfare of the school or pupils, the court would be obliged to uphold the district's decision not to reemploy the teacher. Thus, school boards would retain the substantial discretion they now enjoy in deciding whether or not a given "cause" is sufficient to warrant not reemploying a probationary teacher.

By contrast, a school board's authority to terminate a permanent, tenured teacher is much more limited. Dismissal is permitted only for certain statutorily enumerated causes. (See Ed. Code, § 13403.) Moreover, as noted by the majority (*ante,* p. 822) in reviewing the dismissal of a permanent teacher, courts may determine whether the charged conduct is sufficiently serious to warrant dismissal, or alternatively, whether some lesser sanction is appropriate. That would not be the case with respect to the reemployment of probationary teachers.

Thus, contrary to the majority's suggestion, a decision recognizing the "vested" nature of a probationary teacher's right under *Bixby* and *Strumsky* would not eliminate the existing distinctions between probationary and permanent teachers.

The majority's decision to deny probationary teachers the limited protection they are entitled to under *Bixby* and *Strumsky* is particularly unfortunate in light of the fact that, in today's job market, a local school board's decision not to reemploy a probationary teacher is effectively equivalent to a revocation of that teacher's credential. It is no secret, of course, that there presently exists a nationwide surplus of qualified elementary and secondary school teachers over the number of available teaching positions, or that this problem is particularly acute in California.[3] Consequently, it is extremely unlikely that any teacher, once terminated for cause, will be rehired in the foreseeable future over the countless applicants whose records do not bear the blemish of an earlier dismissal. Given the critical importance of such a decision to a young teacher's career, the need for the minimal safeguard provided by the "independent judgment" standard is manifest.

In sum, the Legislature has enacted a specific provision protecting a probationary teacher from losing his job in the absence of a showing of cause; this statute provides the probationary teacher with a "vested" interest in reemployment, requiring a trial judge to exercise "independent judgment" when reviewing the factual basis of a school board's decision not to reemploy the teacher. The majority reach a contrary conclusion only by ignoring the effect of the governing legislative provision and by misconstruing the nature of the "independent judgment" doctrine.

I would reverse the judgment and remand to the trial court for reconsideration in light of the "independent judgment" standard of review.

Wright, C. J., and Sullivan, J., concurred.

---

[3]See generally Comment, *The Scope of Judicial Review of Probationary Teacher Dismissal in California: Critique and Proposal* (1974) 21 UCLA L.Rev. 1257, 1279-1280 and footnote 104. This article cites a recent National Education Association report which found teachers facing the worst job market since the depression and predicted a nationwide surplus of more than 100,000 annually by 1976.