[Civ. No. 60319. Second Dist., Div. Three. Oct. 29, 1981.]

MT. SAN ANTONIO COLLEGE FACULTY ASSOCIATION, INC., et al., Plaintiffs and Appellants, v.
BOARD OF TRUSTEES OF THE MT. SAN ANTONIO COMMUNITY COLLEGE DISTRICT et al., Defendants and Respondents.

28

**COUNSEL**

Raymond L. Hansen, Charles R. Gustafson and A. Eugene Huguenin, Jr., for Plaintiffs and Appellants.

Wagner & Wagner and John J. Wagner for Defendants and Respondents.

**OPINION**

**LUI, J.**—Appellants Mt. San Antonio College Faculty Association, Inc., CTA/NEA (Association), and Robert A. Goodell (Goodell) ap-

peal from a judgment denying their petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 against Board of Trustees of the Mt. San Antonio Community College District (District) and John D. Randall, superintendent and president of the District, seeking to have set aside the decision of the District not to reemploy Goodell for the 1979-1980 academic year.

*Facts*

The Association and the District entered into a collective bargaining agreement (Agreement) on March 15, 1978. This Agreement covered all full and part-time contract and regular faculty. Goodell was employed by the District as a contract employee in September 1977 and was a certificated employee in his second full year of employment during the 1978-1979 academic year.[1] As a contract employee, Goodell was a probationary employee as set forth in Education Code section 87602.[2]

---

[1] The terms and conditions of Goodell's employment with the District are set forth in the Agreement entered into pursuant to the Education Employment Relation Act, Government Code section 3540 et seq. The Agreement includes the procedures for evaluation of contract faculty employees. The pertinent provisions of the Agreement relating to the evaluation of second contract year employees such as Goodell are set forth in Article XII, section 4 as follows: "*Evaluation Schedule for Contract Faculty* [¶] The procedure for evaluating contract faculty is a two-year program. Evaluation is continual throughout the contract period and either a first or second year evaluation may result in a recommendation not to reemploy. [¶]. For contract employees, a rating of unsatisfactory by the authorized evaluators in any category is sufficient grounds for not recommending retention. [¶] Contract faculty members shall enhance their self-evaluation by the use of student response forms. [¶] A. *First Contract Year* .... [¶] B. *Second Contract Year* [¶] At least one full class visitation will be made before Thanksgiving of the fall semester. Consultation with the teacher will take place before the Christmas recess. [¶] At least two annual visitations and consultations will be made prior to the evaluation conference, which will be held not later than February 1. [¶] During the second contract year, scheduled visitations shall be made by the department and/or chairperson and by the Dean, Faculty Personnel and/or other administrator. Additional visitations may be arranged as appropriate. [¶] The evaluation shall include a brief report relative to the contract instructor's extracurricular assignment. This report will come from the Office of Student Services or other appropriate office and will be incorporated as one part of the evaluation prepared by the Office of Instruction. [¶] C. *Evaluation Forms for Contract Faculty* [¶] *The Instructor Evaluation Work Sheet* is made out in one copy only by each evaluator. Contract faculty shall be evaluated on a standard College form (See Appendix H, which by this reference is incorporated herein). The work sheets are the property of the individual evaluators. A *Summary of Evaluation* report is prepared on the standard College form identified above by the Vice President, Instruction, or his designee, and is based on the work sheets and observations of the evaluators. This summary shall include a recommendation regarding retention. Prior to February 1, a copy of this report is given to the faculty member and a copy is placed in the faculty member's personnel file. [¶] D. *Appeal Procedure* [¶] A second contract faculty member may appeal a recommendation for not rehiring in accordance with the provisions of State law."

[2] Hereinafter, all statutory references are to the Education Code unless otherwise specified.

On February 21, 1979, the superintendent of the District notified the District's board of trustees of his recommendation that Goodell's services were not required for the 1979-1980 academic year based upon Goodell's unsatisfactory performance. On the same date the Board of Trustees acted upon the recommendation and determined that Goodell's services were not required for the 1979-1980 year. Notice of this determination was given Goodell on February 22, 1979,[3] and on March 2, 1979, Goodell timely requested a hearing pursuant to section 87740.

A hearing was conducted April 23-25, 1979, before an administrative law judge. (Gov. Code, § 11500 et seq.) The District presented the testimony of eight students who had been in Goodell's classes and two instructors. The witnesses testified concerning the allegations of Goodell's teaching performance and conduct in relation to students and coworkers. The dean of the business division, Marvin Gore and the superintendent of the District and president of the college, John Randall, testified regarding procedures used to evaluate Goodell and the board of trustees' actions regarding such evaluations.

The hearing officer's proposed decision was issued May 1, 1979. The proposed decision included a finding that the evaluation of Goodell as required by section 87607[4] did not comply with the standards and procedures established by the governing board in accordance with section 87664[5] and that cause had not been established for not reemploying respondent Goodell for the ensuing school year.[6]

---

[3]This notice complied with section 87610. Failure to give the notice required by this section would have been deemed a decision to employ him as a regular employee.

[4]This section provides in pertinent part: "Before making a decision relating to the continued employment of a contract employee, the following requirements shall be satisfied: [¶] (a) The employee has been evaluated in accordance with the evaluation standards and procedures established in accordance with the provisions of Article 4 (commencing with Section 87660) of this chapter, a fact determined solely by the governing board."

[5]This section provides: "The governing board of each district in consultation with the faculty shall adopt rules and regulations establishing the specific procedures for the evaluation of its contract and regular employees on an individual basis and setting forth reasonable but specific standards which it expects its certificated employees to meet in the performance of their duties. Such procedures and standards shall be uniform for all contract employees of the district with similar general duties and responsibilities and shall be uniform for all regular employees of the district with similar general duties and responsibilities."

[6]The administrative law judge's proposed decisions may be summarized as follows: (1) The evaluation of Goodell did not comply with the rules and regulations of the Dis-

On May 11, 1979, the governing board of the District rendered its decision contrary to the proposed decision of the hearing officer. The Board determined that Goodell had been properly evaluated pursuant to section 87663[7] and that good cause existed for not reemploying Goodell based upon findings of inadequate teaching performance due to his lack of proper presentation of subject matter to students, lack of interest in and understanding students and manifestation of social practices not in conformity with reasonable professional standards which were detrimental to the college.

In denying the writ of mandate, the trial court held that Goodell is a contract employee in the community college system and therefore is a probationary employee under Education Code section 87602. Judicial review is limited to a determination of whether substantial evidence supports the determination of the board. The trial court then ruled substantial evidence supported a finding of compliance by the board with evaluation procedures.[8]

trict (Agreement, Art. XII, 4. B) in that the summary of evaluation report was not based upon the worksheets and observations of other evaluees but purely upon the subjective standard of one evaluation and further did not include a report on Goodell's extracurricular assignments; (2) Goodell's conduct did not constitute sufficient cause not to reemploy him for the ensuing school year principally because the evaluation was based on the evaluation of students and not Goodell's peers; and cause for not reemploying Goodell for the ensuing year has not been shown in that the matters alleged were not shown or relate insignificantly to the welfare of the school and the pupils thereof.

[7]This section states: "Contract employees shall be evaluated at least once in each academic year. Regular employees shall be evaluated at least once in every two academic years. [¶] Whenever an evaluation is required of a certificated employee by a community college district, the evaluation shall be conducted in accordance with the standards and procedures established by the rules and regulations of the governing board of the employing district."

[8]The pertinent portions of the trial court ruling finding that substantial evidence supporting the District decision of May 11, 1979, are as follows: "As a contract employee in the Community College system, Goodell was a probationary employee. (*Educ. C.* § 87608.) Judicial review is thus limited to a determination of whether substantial evidence supports the determination of the board. (*Campbell Elementary Teachers Ass'n., Inc.* v. *Abbott* (1978) 76 C.A.3d 796, 802.) Substantial evidence supports the finding of compliance. Thus, it was testified by the superintendent that the board was provided with the materials pertaining to evaluation of petitioner 'prescribed by the Education Code' and by the president of the faculty association that an exhibit before the hearing officer was a complete evaluation in accordance with the requirements of the collective agreement for evaluation. Such testimony was without objection. [¶] In response specifically to the contentions of petitioner, it may be said: (a) it cannot be determined that extracts from the transcript establish that some review step was omitted—respondent, by reference to the exhibits, argues that they are complete and fully satisfy the required evaluation procedure—it cannot be determined as a matter of law that they are not; (b) the record is inadequate to determine what notices were given of the super-

*Issue*

■  The sole issue on appeal is whether appellants were entitled to have the trial court exercise its independent judgment as to whether the District complied with the evaluation procedures.

*Discussion*

A. *The Standard of Review*

In *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818 [129 Cal.Rptr. 443, 548 P.2d 1115], our Supreme Court concluded that the right of a probationary teacher to be rehired for the next school year was not a vested right and that the standard of judicial review for determining not to rehire remains the substantial evidence rule rather than the independent judgment test provided for in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805]. Appellants do not contest the holding expressed in *Turner* but urge that the independent judgment test should be applied to the factual determination of whether prescribed evaluation procedures were followed. Appellants argue that the case of *Anderson* v. *San Mateo Community College Dist.* (1978) 87 Cal.App.3d 441 [151 Cal.Rptr. 111], supports the proposition that Goodell's right to be evaluated in accordance with the appropriate evaluation procedures is fundamental and became vested in him upon his employment as a contract employee.

*Anderson* is authority for the right of judicial review to determine whether the governing board complied with its own established evaluation procedures.[9] But, we cannot agree that *Anderson* has any value in

---

intendent's decision to accept the recommendation (by petitioner's department head) not to renew goodell's [*sic*] contract and that any notice was inadequate or absent. In any event, since a full hearing was held, and there was no suspension of petitioner, it is difficult to imagine any prejudice ensuing; (c) it cannot be ascertained whether the board went outside the record before the hearing officer or not, since those proceedings are not part of the record before this court.... [¶] In attacking the sufficiency of the evidence to support the findings, petitioner presents merely the evidence which would support a contrary finding of good teaching performance on his part. All findings as to mis-conduct were supported by specific testimony of students or faculty. The testimony relied upon creates only a conflict which was resolved against petitioner by the board. Substantial evidence supports the board's findings."

[9]*Anderson* dealt with the right of judicial review as to compliance with evaluation procedures set forth in former sections 13346.15 and 13346.20 now sections 87607 and 87608 (contract employee's first contract). Since the similar language is contained in former section 13346.25 now section 87609, the *Anderson* theory would apply also to section 87609 (contract employee's second contract).

resolving the issue of the standard of review in the case at bench since it was brought under Code of Civil Procedure section 1085 with no administrative record to review. In *Anderson*, there was no determination that the right of a probationary teacher to be properly evaluated was a vested right.

The applicable sections of the Education Code dealing with the employment of contract employees, the decisions regarding their continued employment and the right to an administrative hearing are sections 87600-87612. These sections contain no standard regarding the judicial review of a decision of the governing board.[10] In fact prior to *Anderson*, it was debatable whether the decision of the governing board was subject to any judicial review.

Therefore as in *Turner*, the question in the instant case is whether the right of a probationary teacher to be rehired for the next school year is vested within the meaning of *Strumsky* so that a limited trial de novo review rather than a substantial evidence review is applicable. As in *Turner*, we conclude the right is not vested and that the trial court properly utilized the substantial evidence rule. The court in *Turner* stated: "Although this court has broadly outlined the distinction between vested and nonvested rights, it has not drawn a sharp line of demarcation. In *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], the court stated: 'As we have noted, in determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right is "vested," that is, already possessed by the individual. [Citation.]' ... By labelling the position probationary, the Legislature had clearly advised the employee that the position is neither vested nor permanent. Probation means the teacher is on trial—his competence and suitability remaining to be determined. (See Webster's New Internat. Dict. (3d ed. 1961) p. 1806.) Probationary is the opposite of vested. Although the label may not be determinative, it is strong indication of legislative intent not to grant a vested right. [¶] To hold that a proba-

---

[10]Section 87607, subdivision (a) refers to the provisions of article 4, chapter 3, part 51, division 7, title 3 of the Education Code commencing with section 87660, entitled Evaluations. (See fn. 4.) Section 87660 states that "this Article govern[s] the evaluation of, the dismissal of, and the imposition of penalties on, certificated personnel employed by a community college district." The reference in section 87607, subdivision (a) applies only to sections 87660 to 87664. The balance of the Article applies to dismissal of regular employees and contract employees during the year for cause and is not applicable to decisions not to rehire a contract employee pursuant to sections 87607-87609.

tionary teacher has a vested right to be rehired for the next school year—requiring limited trial de novo review—would contravene portions of section 13443, subdivisions (c) and (d). By providing that the school board's determination of the sufficiency of the cause is conclusive, the Legislature has foreclosed judicial evaluation of the gravity of misconduct of probationary teachers. Under subdivisions (c) and (d), once misconduct relating to the schools and their pupils is established, it is within the school board's discretion to determine whether the cause is sufficiently serious to warrant a refusal to rehire and whether the teacher's other qualities justify reemployment. [Citations.]" (*Turner, supra,* 16 .Cal.3d 818, 824-826.)

*Turner* involved a high school teacher on a probationary period of three years. Here we are dealing with a community college teacher on a two-year probationary period. The statutory scheme for probationary evaluations of high school and community college teachers is the same.[11] The Education Code leaves the final determination as to rehiring probationary teachers with the governing board. The trial court properly used the substantial evidence rule in reviewing the administrative record for supporting evidence regarding the governing board's decision.

B. ██ *Substantial Evidence Supports the Governing Board's Decision*

We have reviewed the administrative record upon which the District based its opinion not to reemploy Goodell following the conclusion of his second contract year. Pursuant to article XII, section 4.B. of the Agreement, visitations and consultations with Goodell occurred between the period prior to Thanksgiving, 1978, and February 1, 1979, by appropriate evaluators Marvin Gore, dean of the business division, Dr. James Ford, department chairman and Joseph Zagorski, vice president. An evaluation conference between Gore and Goodell occurred February 1, 1979, at which time Goodell was informed that he had received four unsatisfactory ratings and would not be recommended for rehiring.

In the trial court, Goodell did not complain that the visitations and consultations were not in compliance with the Agreement. His com-

---

[11]Compare section 44949, subdivisions (c) and (d) with section 87740, subdivisions (c) and (d). Both subdivisions were formerly section 13443.

plaint was that Gore's summary of evaluation report was not based on the worksheets and observations of all the evaluators because it failed to include the evaluation of Dr. Ford which included only satisfactory ratings and four outstanding ratings. Goodell further complains that the summary of evaluation failed to include a report on his extracurricular assignments.

Admitted into evidence before the hearing officer without objection were: exhibit D, students' evaluations of Goodell; exhibit E, Dr. Ford's evaluation of Goodell; exhibit F, Gore's evaluation of Goodell for the second contract year; and exhibit G, prior evaluations of Goodell. These exhibits became part of the administrative record and were before the governing board on May 11, 1979. In fact counsel for both appellant and respondent appeared before the governing board and made written and oral presentations. Thus, even if we consider the summary of evaluation deficient, the information of all evaluators was submitted to the governing board prior to its decision not to reemploy Goodell. As to Goodell's complaint regarding the absence of any reference to his extracurricular activities in the summary of evaluation, this information was contained in Mr. Gore's report, exhibit F. In any event, Goodell failed to establish at the hearing that such extracurricular activities were assignments and not simply voluntary activities he engaged in without obligation as to his employment with the District.

A review of the administrative record substantiates the finding of unsatisfactory teaching performance, lack of understanding of students and inappropriate conduct toward students and coworkers. The testimony of the students and instructors indicated that Goodell spent substantial class time discussing personal experiences unrelated to the course subject matter, that Goodell used offensive language in class and made inappropriate comments in reprimanding students and that Goodell approached and kissed a student who was working alone in a classroom causing her extreme embarrassment. This evidence supports the governing board's decision regarding cause not to reemploy Goodell. Since section 87740, subdivision (c) leaves the final decision of reemployment with the Board, the Board could choose to accept or reject the hearing officer's proposed decision. ■ "Where the trial court was limited to the substantial evidence test in reviewing the decision of an administrative agency the trial and appellate courts occupy identical positions with respect to the administrative record, and the appellate court must itself review the whole administrative record to determine whether the agency's decision was supported by substantial evidence. [Cita-

tion.]" (*McGue* v. *Sillas* (1978) 82 Cal.App.3d 799, 807, fn. 5 [147 Cal.Rptr. 354].) ██ We are satisfied that the administrative record contains substantial evidence to support the governing board's decision.

For the reason stated herein, we affirm the judgment of the trial court.

Potter, Acting P. J., and Cobey, J., concurred.