[Civ. No. 42025. Second Dist., Div. Five. July 19, 1974.]

GLADYS YOUNG, Plaintiff and Appellant, v.
GOVERNING BOARD OF THE OXNARD SCHOOL DISTRICT,
et al., Defendants and Respondents.

**COUNSEL**

Arthur Mabry for Plaintiff and Appellant.

Dorothy L. Schechter, County Counsel, and Craig Price, Assistant County Counsel, for Defendants and Respondents.

**OPINION**

**HASTINGS, J.—**

### STATEMENT OF THE CASE

This appeal arises from a judgment of the superior court denying a writ of mandate brought to review administrative proceedings which resulted in respondent, Governing Board of the Oxnard School District (Board), electing not to reemploy appellant, Gladys Young (Young), a probationary school teacher for a succeeding school year. An administrative hearing had been held pursuant to Young's request in accordance with the provisions of California Education Code section 13443[1] to determine whether cause existed for not reemploying her.

### STATEMENT OF FACTS

Young was employed by Board as a probationary school teacher beginning with the 1968-1969 school year. She was reemployed by Board for each of the two succeeding years. In February 1971, Young was given preliminary notice in accordance with section 13443, relating to probationary teachers, that her services would not be required for the ensuing 1971-1972 school year. Young elected to have a hearing to determine if there was cause for not reemploying her, in accordance with her right therefor, as specified in section 13443. Subsequently, on or about April

---

[1] All code references are to the Education Code unless otherwise specified.

2, 1971, an accusation was prepared submitting that the acts and omissions as set forth therein constituted cause for non-reemployment of Young as a probationary employee.

Thereafter, in accordance with law, an administrative hearing was conducted before Helen L. Gallagher, hearing officer from the Office of Administrative Procedure, State of California at Oxnard, California, on April 20 through 23 and May 12 through 14, 1971. Young and Board were both represented by counsel during the entirety of the administrative hearing.

Following submission of the matter to the hearing officer on May 14, 1971, a proposed decision was issued on May 26, 1971, and on June 3, 1971, the Board determined and ordered. that Young would not be re-employed for the 1971-1972 school year.

Young, on October 18, 1971, filed a petition for a writ of mandamus in the Superior Court of the County of Ventura challenging the validity of Board's determination not to reemploy her. The matter came on regularly for hearing before the Honorable Richard C. Heaton who, following argument of the parties and the presentation of evidence, ordered that the petition for a writ of mandamus be denied and that the alternative writ of mandamus which had previously issued be discharged.

### THE ISSUE OF TIMELY NOTICE

Subsequent to the filing of this appeal, *Stewart v. San Mateo Junior College Dist.*, 37 Cal.App.3d 345 [112 Cal.Rptr. 272], was decided, holding that under the facts of that case notice of the *final decision* by the Board not to rehire a probationary teacher must be given no later than May 15 of the year in question. The *final decision* not to reemploy Young was made on June 3, 1971. Therefore we requested from counsel for Young and Board further briefs on whether Young received notice within the time required by law. Young, for reasons stated *infra,* contends the notice was not timely.

Section 13443 of the Education Code, subdivisions (e) and (i) provides as follows:

"(e) Notice to the probationary employee by the governing board that his services will not be required for the ensuing year shall be given no later than May 15."

"(i) If after request for hearing pursuant to subdivision (b) any con-

tinuance is granted pursuant to Government Code section 11524, the dates prescribed in subdivisions (c), (d), (e) and (h) which occur on or after the date of granting the continuance shall be extended for a period of time equal to such continuance."

Government Code section 11524 provides:

"The agency may grant continuances. When a hearing officer of the Office of Administrative Hearings has been assigned to such hearing, no continuance may be granted except by him or by the hearing officer in charge of the appropriate regional office of the Office of Administrative Hearings, for good cause shown."

On April 23, 1971, at the hearing and after the Board had completed presentation of its evidence, the following colloquy occurred:

HEARING OFFICER: I have had a number of conferences between Counsel off the record with respect to the time requirement in this matter, and due to commitments of the Hearing Officer and counsel we have arrived upon the continuance date of May 12, May 13, and May 14.

Am I stating the matter correctly?

MR. COHEN [Assistant County Counsel]: That is my understanding, your Honor.

HEARING OFFICER: Mrs. LeVine?

MRS. LEVINE [Attorney for Young]: My understanding, too, your Honor, I concur.

HEARING OFFICER: In view of this I will state that good cause exists to continue the matter. I also might point out for the record since at the beginning of the proceeding it was not pointed out by Mrs. LeVine herself, she was retained as counsel for the respondent a short time prior to the commencement of the hearing and her motions for a continuance presented to the Office of Administrative Procedure were denied, and I would like to add the fact that I would think it would be fair to afford proper due process to the respondent that her counsel have some time to prepare her defense.

MRS. LEVINE: Thank you, your Honor.

HEARING OFFICER: On this basis I would point out, under Section 13443(d), of the Education Code, that notice shall be given no later than May 15th, and under subsection of that code, Section 13443, the continu-

ance of the case extends the period of time equal to such continuance. I want Mrs. Young to be aware of this as well as counsel.

Is this fully understood?

MR. COHEN: For the district, so understood.

HEARING OFFICER: Mrs. LeVine?

MRS. LEVINE: Yes, your Honor.

HEARING OFFICER: Mrs. Young, you understand this, do you not?

GLADYS YOUNG: Yes.

HEARING OFFICER: Is this agreeable on that basis, Mrs. Young?

GLADYS YOUNG: Yes.

Young points out that the continuance requested by her was denied, and suggests the continuance granted (apparently on the hearing officer's own motion) was not for good cause. We disagree. Although the record is somewhat ambiguous, one reason for the continuance was the hearing officer's congested calendar. Also, the hearing officer apparently reconsidered Young's request for a continuance and felt it had some merit. In any event, we agree with the hearing officer's statement that it was for cause, thus complying with subdivision (i). The continuance extended the time for giving *final notice* to June 3. After the completed hearing on May 14, 1971, the Board sent Young a copy of the hearing officer's proposed decision which determined there was cause for petitioner's dismissal. The transmittal letter stated the Board would take action on the decision at a special meeting at 7:30 p.m., June 3, 1971. Young was present with her attorney and at approximately 8:30 p.m. the two were called into a closed meeting (just off the public meeting room) and her attorney was advised she could make her plea on behalf of Young. She did this and the two left the closed meeting room and returned to the public meeting room. Approximately 10 minutes later the Board entered the open meeting room and a statement was made that the dismissal of Young had been sustained. Young contends this statement did not satisfy the requirements of notice prescribed by section 13443 in that it did not contain a statement of dismissal, but merely an assertion of acquiescence to the hearing officer's decision; that the record shows the determination not to reemploy her was dated June 4, 1971, which was one day later and

after the notice deadline. No objection is made by Young that the notice on June 3d was not delivered to her in writing,[2] nor does she claim she was misled, or did not understand the Board's declaration that night.

■ On this point we cannot agree with Young. She had received a copy of the hearing officer's decision in advance and she knew it determined there was cause for her dismissal. Notice to her that the Board had sustained this finding was adequate to advise her that she was not to be reemployed and that she should seek employment elsewhere.

"[T]here can be little doubt that the Legislature's intent was that May 15 be a deadline for finally notifying the teacher of his dismissal. An obvious purpose of the statute is to allow a teacher, whose employment will be ended with the school year's termination, timely final notice of that fact in order that he may seek other employment in his profession during the coming school year. Any delayed notice would seriously and unfairly curtail his opportunities to compete for employment elsewhere." (*Stewart v. San Mateo Junior College Dist., supra,* 37 Cal.App.3d at p. 348.) The notice to Young, although after May 15th, was timely according to the statute.

### THE APPLICABLE STANDARD FOR REVIEW

Another case, *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], was decided after the filing of this appeal. Prior to this case the applicable standard for review was the substantial evidence test as enunciated in *Bixby* v. *Pierno,* 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242]; *American Federation of Teachers* v. *San Lorenzo etc. Sch. Dist.,* 276 Cal.App.2d 132 [80 Cal. Rptr. 758], and many other companion decisions. *Strumsky* changes this rule in certain situations by requiring the reviewing court to exercise its independent judgment. The court states at page 32: "After solemn and extended consideration we have concluded that there no longer exists any rational or legal justification for distinguishing with regard to judicial review between, on the one hand, local agencies and state agencies of local jurisdiction and, on the other, state agencies of legislative origin having

---

[2]Subdivision (e) does not state the notice must be in writing. Subdivision (g) could imply otherwise. It states: "Any notice or request shall be deemed sufficient when it is delivered in person to the employee to whom it is directed, or when it is deposited in the United States registered mail, postage prepaid and addressed to the last known address of the employee." The section is not clear and we note it here for legislative attention in the event it wishes to address itself to the problem. However, Young does not deny receiving the oral notice in the form outlined above on June 3, nor, as noted, does she claim error because written notice was not given on June 3; rather, her objection is to the wording of the oral notice.

statewide jurisdiction. Accordingly, we hold that the scope of judicial review applicable to adjudicatory orders or decisions of the latter class of agencies—which was reaffirmed and explained by us in *Bixby*—is also applicable to adjudicatory orders or decisions of agencies in the former class. *That rule, which henceforth* [3] *shall be applicable to all adjudicatory orders or decisions of administrative agencies of legislative or local origin, is as follows: If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in the light of the whole record."* (Italics added.)

The court recognizes that prior to *Strumsky,* the independent judgment rule did not apply to two categories of administrative agencies. The first category includes agencies of constitutional origin that are granted limited judicial power by the Constitution itself. In the second category are "local agencies"—which include purely local agencies and state agencies of limited territorial jurisdiction. After a very learned discourse on the decisional law that created the above exceptions, Justice Sullivan, author of the majority opinion in *Strumsky,* concludes that there is no reason for the exception to apply to administrative agencies in the second category.

The Oxnard School District obviously is a local agency and within the latter category. The procedure for the administrative hearing is set forth in article 5, section 13443 et seq. of the Education Code. The procedure and rights encompassed therein are not based on constitutional authority with a grant of limited judicial power. Thus *Strumsky* would require the trial court to apply the "independent judgment" rule in its review unless the administrative agency's decision did not affect a fundamental vested right belonging to Young. A synopsis of the meaning of this interest is found in *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 144-146, and in part is as follows: "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life

---

[3]On April 24, 1974, the court filed its modification of opinion in *Strumsky,* 11 Cal.3d page 45, and stated, "So that there will be no misunderstanding, we emphasize that this rule shall apply to all pending and future proceedings in trial courts and all pending and future appeals."

situation. This approach finds its application in such an instance as the opportunity to continue the practice of one's trade or profession [fn. omitted]—a right which induced this court's statement in 1939: 'it necessarily follows that the court to which the application for mandate is made to secure the restoration of a professional license must exercise an independent judgment on the facts. . . .' (*Drummey* v. *State Bd. of Funeral Directors, supra,* 13 Cal.2d 75, 85.) As Professor Jaffe, a leading authority in the field of administrative law, has written: 'The California rule can be justified in so far as it gives additional procedural protection to an interest of great importance as where a professional license has been revoked. The protection may be the more needed to overcome likely prejudices of a professional licensing body against mavericks and unconventional practitioners.' Jaffe, Judicial Control of Administrative Action, *supra,* pp. 191-192 (fn. omitted). . . .

"As we have noted, in determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right is 'vested,' that is, already possessed by the individual. (*McDonough* v. *Goodcell, supra,* 13 Cal.2d 741, 753.) In cases involving application for a license, the courts have largely deferred to the administrative expertise of the agency. (See *So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 174-178 [223 P.2d 1].) Courts are relatively ill-equipped to determine whether an individual would be qualified, for example, to practice a particular profession or trade. (See *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal. App.2d 124, 129, 131-132 [40 Cal.Rptr. 171].) In a case involving the agency's initial determination whether an individual qualifies to enter a profession or trade the courts uphold the agency decision unless it lacks substantial evidentiary support [fn. omitted] or infringes upon the applicant's statutory [fn. omitted] or constitutional [fn. omitted] rights. *Once the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession, the agency's subsequent revocation of the license calls for an independent judgment review of the facts underlying any such administrative decision.*" (Italics added.)

We agree with Justice Burke's statement in his concurring opinion in *Bixby* that decisional law has revealed that the courts have experienced difficulty in determining what are "vested" rights for purposes of applying the above rule. We find some guidelines to assist us, however, in the following cases:

In *Merrill* v. *Department of Motor Vehicles,* 71 Cal.2d 907, 915 [80

Cal.Rptr. 89, 458 P.2d 33], the court gives an example of a "vested" right in connection with licenses and states, "[i]t has been held that the denial of a license to a previously unlicensed person does not affect a 'vested' right, whereas the suspension or revocation of an existing license does affect such a right. [Citations.]"

The U.S. Supreme Court in *Board of Regents* v. *Roth,* 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701],[4] was required to consider the rights of a nontenured teacher who was not rehired. He challenged the board of regent's action contending he was entitled under the 14th Amendment to a hearing. The regents had no rules protecting nontenured teachers. The teachers simply had to be informed by February 1 of each year concerning retention or non-retention, but no reason for non-retention had to be given. The court emphasized that when "protected interests" are implicated, the right to some kind of hearing is paramount. However, then it stated at pages 573-574, 577-578 [33 L.Ed.2d at pp. 559, 561], "there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case. . . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. . . .

"[R]espondent's 'property' interest in employment at Wisconsin State University-Oshkosh was created and defined by the terms of his appointment. Those terms secured his interest in employment up to June 30, 1969. But the important fact in this case is that they specifically provided that the respondent's employment was to terminate on June 30. *They did not provide for contract renewal absent 'sufficient cause.'* Indeed, they made no provision for renewal whatsoever.

"Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely

---

[4]The Board relies heavily on this case to sustain its position that Young had no vested right. We believe the Board has overlooked the persuasive dictum that is so applicable to this case.

no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. [Fn. omitted.] In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." (Italics added.)

The same opinion also recognizes that a substitute teacher can have an expectancy of continued employment that is sufficient to warrant a due process hearing. The court states at pages 576-577 [33 L.Ed.2d at pp. 560-561]: "Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions [citation], and college professors and staff members dismissed during the terms of their contracts [citation], have interests in continued employment that are safeguarded by due process. Only last year, the Court held that this principle 'proscribing summary dismissal from public employment without hearing or inquiry required by due process' also applied to a teacher recently hired without tenure or a formal contract, *but nonetheless with a clearly implied promise of continued employment.* [Citation.]" (Italics added.)

The rights afforded a probationary teacher (upon which his expectancy of continued employment is based) are delineated in section 13443. In substance, it provides the teacher *shall* be rehired unless it can be shown that cause is present for not rehiring him; and that cause relates solely to the welfare of the school and its pupils. The governing board must provide him with a statement of the reasons if so requested, and he is entitled to a hearing.[5] This is not only substantially different from the rules (or paucity thereof) of the Board of Regents of Wisconsin State University-Oshkosh, but of further significance, it provides for a statement of the causes, and the right to a hearing.

Although there is a difference between the rights of a permanent teacher and a probationary teacher under the California Education Code, obviously section 13443 gives the latter substantial status.[6] Sections 13200

---

[5]Subdivision (h) of section 13443 gives further credence to this interpretation by providing "In the event that the governing board does not give notice provided for in subdivision (e) of this section on or before May 15, the employee shall be deemed reemployed for the ensuing school year."

[6]The cause which must be present to warrant a decision not to reemploy a probationary school teacher is different than the cause which is required in connection with the dismissal of a permanent school teacher (or the discharge of a probationary school teacher during the course of a school year) . . . a permanent (or tenured)

et seq. set forth certain requirements necessary for a "probationary credential" to be held by a new teacher before he[1] may be hired to teach. Accordingly, a delineated amount of education and training is required before a person can qualify to teach in a probationary status. Normally describing a person's employment as "probationary," "non-tenured," "temporary," et al., indicates a trial period during which the employee must demonstrate he is qualified for permanent status that often carries with it the vested interest or fundamental right that we are seeking here. Such a concept, however, is not controlling on our determination if the rights afforded the employee by law dictate another interpretation. By applying the rule enunciated in *Bixby* (p. 777, *ante*), Young has a vested right.

Absent the rights given the probationary teacher in section 13443 we would agree with the statement in *Board of Regents* v. *Roth, supra,* 408 U.S. 564, that at most, Young had a *hope* of being rehired. She is not precluded from being rehired as a school teacher in any other school district or foreclosed from other employment. But such is not the case here as the section does create a right in Young to employment that shall continue until it is *divested for cause*.

Ironically, the statute enacted to protect Young now might effect her chances for immediate employment as a teacher. Although she is not losing her probationary certificate, the fact that she was not rehired is, as a practical matter, notice to those in her profession that she was released for cause; thus, her chances of being hired by another school district are diminished. Section 13443 provides that the reason for not rehiring the employee shall remain confidential until the employee requests a hearing. Many, if not most, employees will request a hearing, thereby establishing a record open to all future employers. This further illustrates the possible economic side-effects caused by the section—it has created an interest that can affect the employee in varying ways. Thus it meets another *Bixby* test in that the interest has an important economic aspect to it and in human terms is very viable to the individual in his life situation.

We conclude that said code section has effectively given Young a "vested right" that required the trial court to independently determine from the evidence whether there was an abuse of discretion because the findings are not supported by the weight of the evidence.

As stated in *Strumsky,* because the trial court, in denying the writ, con-

---

school teacher may be dismissed only upon a showing of one or more of the causes for dismissal set forth in Education Code section 13403 (unprofessional conduct, incompetency or dishonesty, for example).

sidered itself bound by existing law to apply the substantial evidence standard of review, we reverse the judgment and remand the cause for determination under the rule announced herein.

■ The Board has requested us to conduct an independent review of the evidence and make a final determination of the matter instead of returning the case to the trial court should we decide, as we do, that *Strumsky* is applicable. Based on the law established in *Tupman* v. *Haberkern,* 208 Cal. 256 [280 P. 970], we must decline to do so. In *Tupman* it was argued that where a trial court is to decide a case from a record submitted to it, and where the judge has not seen a witness and heard testimony, that this court is in the same position to review the evidence. The court, in rejecting the argument, observed that the essential distinction between the trial and appellate court grows out of consideration of jurisdiction. It is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law, and this court can only set aside a finding for want of evidence where there is no evidence to support it, or where the supporting evidence is so slight as to show abuse of discretion. The court then stated at pages 263, 266: "We find no good reason for applying a different rule as between evidence consisting of the transcript of the testimony taken before another judge and deposition evidence. In neither case has the deciding judge the witnesses before him so that he may appraise their credibility, but he has the facts before him, and his findings therein, unless there is no substantial basis therefor, are final. . . .

"In other words, it was not the purpose generally to so confuse the functions of the respective courts as to make the findings of the trial courts, when based on substantial evidence, merely recommendations as, for example, the finding of a referee or commissioner."

We have not given the record our independent review; we have reversed for the limited reason stated and this opinion should not be interpreted as favoring either party when the independent review is undertaken.

Reversed and remanded for determination under the rule announced herein.

Kaus, P. J., and Loring, J.*, concurred.

A petition for a rehearing was denied August 13, 1974, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied September 12, 1974.

---

*Assigned by the Chairman of the Judicial Council.